# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| YORIE VON KAHL, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 09-0635 (RWR) |
| BUREAU OF NATIONAL AFFAIRS, INC., | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Plaintiff Yorie Von Kahl brings this libel action against defendant Bureau of National Affairs, Inc. ("BNA") alleging that BNA defamed him in summaries published about a petition he filed following his criminal prosecution. The parties have cross-moved for summary judgment. Because BNA's statements were not privileged and genuine material factual issues remain for jury resolution, both motions will be denied.

### BACKGROUND

In 1983, plaintiff was with a group of people that included his father for whom an arrest warrant was outstanding. United States Marshals attempted to arrest the father. A shootout started and two marshals were killed. Plaintiff was indicted under 18 U.S.C. §§ 1111 and 1114 in each of two counts for first degree murder and killing a United States marshal in the line of duty,[1] and in other counts for assaulting United States marshals and other law enforcement

---

[1] Under federal law, premeditated murder is considered "murder in the first
(continued...)

1

officers, conspiracy to assault, and harboring and concealing a fugitive. The jury acquitted plaintiff of both counts of first degree murder but convicted him of the lesser offense of second degree murder included in both counts, and of other offenses. *See United States v. Faul*, 748 F.2d 1204 (8th Cir. 1984); *United States v. Kahl*, No. A3-96-55, 2003 WL 21715352, at *1 (D.N.D. July 14, 2003); Mem. of P. & A. in Supp. of Def. The Bureau of National Affairs, Inc.'s Mot. to Dismiss or for Summ. J. ("BNA Mem."), Ex. A (Petition for a Writ of Mandamus to District Judge Ralph Erickson, *In re Kahl*, No. 04-1717 (U.S. June 17, 2005)) ("mandamus petition") at 3-4.[2] On July 17, 2005, plaintiff's counsel filed in the Supreme Court of the United States a petition for a writ of mandamus, which challenged the sentencing court's jurisdiction as well as the application of 18 U.S.C. §§ 1111 and 1114. BNA Mem. at 1-2. The mandamus petition was denied. *In re Kahl*, 546 U.S. 809 (2005).

BNA publishes the *Criminal Law Reporter* ("CLR"), a section of which summarizes cases filed before the Supreme Court. On August 17, 2005, BNA published in the CLR the following portion of a summary concerning plaintiff's mandamus petition:

---

[1](...continued)
degree," 18 U.S.C. § 1111(a), while "[a]ny other murder is murder in the second degree." *Id.* Penalties for a person found guilty of killing an officer or employee of the United States government "while such officer or employee is engaged in or on account of the performance of official duties" are set forth in 18 U.S.C. § 1114, which authorizes punishment under 18 U.S.C. § 1111 for murder.

[2] Judge Erickson presided over plaintiff's post-conviction matter, and denied his motion for correction of sentence under FED. R. CRIM. P. 35(a). *See United States v. Faul*, 748 F.2d 1204 (8th Cir. 1984).

**04-1717 In re Kahl**
*Homicide – Murder of U.S. marshals – Jury instructions – Sentencing*

> Ruling below (D. N.D., 6/24/83):
>
> Petitioner, who showed no hint of contrition and made statements to press that he believed that murders of U.S. marshals in course of their duties were justified by religious and philosophical beliefs, is committed to custody of the U.S. Attorney General for imprisonment for life based on his convictions on two counts of violating 18 U.S.C. §§ 1111, 1114, and 2, terms to run concurrently; for 10-year term of imprisonment on each of four counts on which he was convicted of violating 18 U.S.C. §§ 111[1], 1114, and 2, which terms will run concurrently but consecutively to life term; to five-year term of imprisonment for violating 18 U.S.C. §§ 1071 and 2, term to run consecutively to 10-year term and life term; and to five-year term of imprisonment on his conviction for violating 18 U.S.C. § 371, term to run concurrently to five-year, 10-year, and life terms.

Compl., Ex. 1 (CLR summary for Docket No. 04-1717, *In re Kahl*). The next paragraph of the summary sets forth the legal questions presented in the mandamus petition. *Id.* Plaintiff alleges that he "expressly . . . denied any murder of U.S. Marshals in [the] course of their duties as reflected in the jury acquittals expressly finding [p]laintiff 'Not Guilty' . . . and was seeking to compel enforcement of the jury's acquittals" through the mandamus petition. Compl. ¶ 9. According to plaintiff, the first sentence of the summary "contain[ed] numerous false facts all of which contextually were clearly libelous *per se*." *Id.* ¶ 8.

On July 3, 2007, plaintiff sent a letter to Paul N. Wojcik, BNA's President, "identifying the false, falsely attributed and defamatory statements" in the published summary and "informing [him] of injuries caused to [p]laintiff thereby, and requesting a retraction and public apology with an explanation to include the true facts[.]" *Id.* ¶ 12. Plaintiff also sought "compensat[ion] . . . for injuries caused by such publication." *Id.* ¶ 13.

3

On July 18, 2007, BNA published "a purported '[c]larification,'" *id.* ¶ 14 (brackets in original), which stated:

### Clarification

> In a *Summaries of Recently Filed Cases* entry that ran at 77 CrL 2127, concerning U.S. Supreme Court petition No. 04-1717, the summary of the sentencing judge's ruling should have begun: "Petitioner who was said to have believed that murders were justified, . . . ."

*Id.*, Ex. 2 (Clarification) (emphasis in original).

Plaintiff alleges that BNA published libelous statements that he: (1) "showed no hint of contrition;" (2) "made statements to press that he believed that murders of U.S. marshals in the course of their duties were justified" on the basis of "religious and philosophical beliefs;" and (3) is incarcerated "based on his convictions on two counts of violating 18 U.S.C. §§ 1111, 1114, and 2." Compl. ¶ 11. He further alleges that, because the publications made plaintiff "appear so odious and dangerous," *id.* ¶ 26(d), and otherwise called into question his character, reputation and credibility, *see id.* ¶ 26(b), his "then-pending petition for mandamus . . . was arbitrarily denied after publication by . . . BNA . . . of the libelous statement(s)[.]" *Id.* ¶ 26(e). Moreover, plaintiff contends that the purported clarification made him appear more odious by falsely representing the original statement "to be the product of an official judicial adjudication." *Id.* ¶ 43. Plaintiff demands compensatory, special and punitive damages, plus costs of this litigation. *Id.* ¶¶ 48-52.

BNA has moved to dismiss the complaint or for summary judgment, arguing that its statements are protected by the fair reporting privilege.[3] Plaintiff opposes and has cross-moved for summary judgment as to liability and relief.

DISCUSSION

*Summary Judgment Standard*

Because the parties have presented, and the Court has considered, matters outside the pleadings, the Court treats the parties' motions as cross-motions for summary judgment. *See* FED. R. CIV. P. 12(d). Summary judgment may be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), and may support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1). Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party

---

[3] BNA also argues that plaintiff's claims are barred by the statute of limitations. The parties represent that the District of Columbia is the place where plaintiff allegedly suffered harm to his reputation. *See* Compl. ¶¶ 23, 26; BNA Mem. at 9-10. Therefore, the law of the District of Columbia applies. Under District of Columbia law, plaintiff's claims are not barred by the statute of limitations because, as BNA acknowledges, *see* Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss or for Summ. J. at 1 n.1, the limitations period is tolled since plaintiff has been continuously incarcerated since the claims arose. *See* D.C. Code § 12-302(a)(3). With respect to these matters, BNA's motion will be denied.

submits his own affidavits, declarations or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In responding to a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Instead, while the moving party shoulders the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with specific facts showing that there is a *genuine issue for trial.*" *Id.* at 587 (internal quotation marks and citation omitted) (emphasis in original). Although the court should draw all favorable inferences from the supporting materials submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient evidence that a reasonable trier of fact could find for the nonmoving party. *Laningham v. United States Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *see Anderson*, 477 U.S. at 251-52 (stating that the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

*Plaintiff's Motion*

To state a claim of defamation under District of Columbia law, a plaintiff must allege:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and

> (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001) (quoting *Crowley v. N. Am. Telecomms. Assoc.*, 691 A.2d 1169, 1173 n.2 (D.C. 1997) (quoting *Prins v. Int'l Tel. & Tel. Corp.*, 757 F. Supp. 87, 90 (D.D.C. 1991)) (internal quotation marks omitted). A statement is defamatory "'if it tends to injure [the] plaintiff in . . . [his] trade, profession or community standing or lower him in the estimation of the community.'" *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000) (quoting *Howard Univ. v. Best*, 484 A.2d 958, 988 (D.C. 1984)); *see Afro Am. Publ'g Co. v. Jaffe*, 366 F.2d 649, 654-55 (D.C. Cir. 1966) (stating that "defamation turns on whether the communication or publication tends, or is reasonably calculated, to cause harm to another's reputation, and it is not necessary for plaintiff to prove that this was its actual result"). "If, at the summary judgment stage, the court determines that the publication is capable of bearing a defamatory meaning, a jury must determine whether such meaning was attributed in fact." *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990) (citing *S. Air Transp., Inc. v. Am. Broad. Cos., Inc.*, 877 F.2d 1010, 1013-14 (D.C. Cir. 1989)); *see Saadi v. Maroun*, No. 8:07-cv-1976-T-24, 2009 WL 1424184, at *4 (M.D. Fla. May 20, 2009) (finding that there is a triable issue of fact as to whether statements "reasonably interpreted as assertions that Plaintiff has committed felonious acts" are libelous *per se* under Florida law); *Moore v. Rural Health Servs., Inc.*, No. 1:04-cv-376, 2007 WL 666796, at *15 (D.S.C. Feb. 27, 2007) (denying plaintiff's summary judgment motion because "the meaning of the events [giving rise to his claim of defamation *per se*] is subject to interpretation, and is therefore for the finder of fact to determine"); *see also Baker v. Warner*, 231 U.S. 588, 594

(1913) (remanding case for a new trial because "[t]he meaning of the [allegedly defamatory] words was in dispute, and . . . that issue of fact was not submitted to the [jury]"); *Olinger v. Am. Sav. & Loan Ass'n*, 409 F.2d 142, 144 (D.C. Cir. 1969) (concluding that the jury must determine whether statements "at least capable of defamatory meaning" were "so understood by the recipients of the letter" containing the statements).

Plaintiff alleges, *see generally* Compl. ¶¶ 17-46, that the statement and clarification published in 2005 and 2007 issues of the CLR are defamatory. The 2005 statement as published presents plaintiff's supposed lack of contrition and religious and philosophical belief justifying the murder of federal marshals as if they were facts. Moreover, both the 2005 and 2007 statements refer to the subject sentencing remarks as rulings of the judge. However, whether these statements actually are defamatory is a question of fact that the Court cannot resolve on summary judgment.[4] *See Prins*, 757 F. Supp. at 91 (denying summary judgment because the Court could "not preclude as a matter of law the possibility that a reasonable jury could find that the [employer's statement that plaintiff was fired] injured [him] in his business or reputation"). Plaintiff's motion for summary judgment on liability and damages will be denied.

*BNA's Motion*

Under District of Columbia law, "publications . . . enjoy a conditional fair report privilege." *Dameron v. Wash. Magazine, Inc.*, 779 F.2d 736, 739 (D.C. Cir. 1985) (citations omitted); *Phillips v. Evening Star Newspaper Co.*, 424 A.2d 78, 87-88 (D.C. 1980). This "conditional immunity . . . applies to the publication of fair and accurate reports of official

---

[4] Plaintiff certainly is not entitled to summary judgment on his claim that the CLR summary was inaccurate and defamatory by reporting on a conviction under 18 U.S.C. §§ 1111 and 1114 without mentioning the greater offenses of which he was acquitted under these statutes.

proceedings," and forms "an exception to the common law rule that one who repeats or republishes a defamation uttered by another adopts it as his own." *Dameron*, 779 F.2d at 739 (internal quotation marks omitted). The District of Columbia Court of Appeals describes the privilege as follows:

> [D]efamatory matter concerning another in a report of any official proceeding or any meeting open to the public which deals with matters of public concern is published on a conditionally privileged occasion if the report is (a) accurate and complete, or a fair abridgement of what has occurred, and (b) published for the purpose of informing the public as to a matter of public concern.

*Oparaugo v. Watts*, 884 A.2d 63, 81 (D.C. 2005) (quoting *Phillips*, 424 A.2d at 88). The fair report privilege extends to reports of judicial proceedings. *See Shipkovitz v. Wash. Post Co.*, 571 F. Supp. 2d 178, 183 (D.D.C. 2008); *Phillips*, 424 A.2d at 88 (commenting that the fair report privilege "has been held applicable to reports of proceedings before any court, or agency of the court"). "The premise of the privilege is the interest of the public in obtaining information about what occurs in official proceedings and public meetings," and therefore it is "only available to the media when their news reports are presented in such a manner that the average reader would be likely to understand the communication to be a report on – or summary of – an official document or proceeding." *White*, 909 F.2d at 527 (citing *Dameron*, 779 F.2d at 739).

An excerpt of the transcript of the June 24, 1983 sentencing proceeding before Chief Judge Paul Benson of the United States District Court for the District of North Dakota is attached as an appendix to plaintiff's mandamus petition, *see* BNA Mem., Ex. A, and its first page beneath the case caption begins:

9

> TRANSCRIPT
> of
> PROCEEDINGS
> June 24, 1983
> 1:30 o'clock P.M.
> (Sentencing)
>
> U.S. District Courthouse
> [illegible] Federal Building
> Fargo, North Dakota
>
> BEFORE:     CHIEF JUDGE PAUL BENSON
>
> * * *
>
> [illegible] sentence for each of these Defendants.
>
> With regard to Yorie Von Kahl there is not even a hint of contrition. The man refused to even talk to the probation officer. We have statements at trial and those issued to the press and whatnot that this man honestly believes that these murders, cold blooded calculated murders[,] were justified by some sort of a perverted religious philosophical belief which perhaps wasn't even his, perhaps it was simply that of his father's [sic]. This country is not safe for Yorie Von Kahl.

*Id.*, Ex. A (App. 33-34).

BNA initially argued that, even if the CLR entry is defamatory, it is "essentially ***identical*** to the stated findings made by the North Dakota District Court in sentencing [p]laintiff," and that "every single one of the statements about which [p]laintiff complains . . . is drawn from the express rulings of the sentencing court." BNA Mem. at 11 (emphasis in original). BNA reasoned that there can be no dispute as to whether its description of the sentencing court's ruling was accurate and complete, or a fair reading of the ruling, and therefore, the fair reporting privilege protects BNA. *Id.*

10

Plaintiff countered that statements BNA represented as a summary of the sentencing court's ruling "are in fact[] the verbatim words of [the prosecutor] in argument during plaintiff's sentencing hearing." Mem. of P. & A. in Supp. of Pl.'s Objections to Def. BNA's Mot. to Dismiss or for Summ. J.; and Cross-Mot. for Summ. or Partial Summ. J., and/or for Declaratory J. ("Pl.'s Mem.") at 7. To support this contention, plaintiff submitted an excerpt of the transcript of the sentencing hearing, *see id.*, Ex. A, during which the prosecutor stated:

> With regard to Yorie Von Kahl there is not even a hint of contrition. The man refused to even talk to the probation officer. We have the statements at trial and those issued to the press and whatnot that this man honestly believes that these murders, cold blooded calculated murders[,] were justified by some sort of a perverted religious philosophical belief which perhaps wasn't even his, perhaps it was simply that of his father's [sic]. This country is not safe for Yorie Van Kahl.

*Id.*, Ex. A at 24:1-10.[5] Plaintiff maintains that the statements published in the CLR are drawn not from Chief Judge Benson's rulings but from the prosecutor's "rhetorical argument." Pl.'s Mem. at 15.

BNA modified its stance in its opposition to plaintiff's cross-motion, essentially abandoning its position that the summary is substantially identical to the sentencing judge's ruling. According to BNA, it need only demonstrate that its summary "provided an accurate and complete or a fair abridgement of the Petition, not whether the Petition itself accurately stated the underlying facts on which it is based." Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss or for Summ. J. at 4 (internal quotation marks omitted). It argued that "the fact that the information published [in the CLR] was consistent with statements of the prosecutor during

---

[5] BNA's reply attached a certified copy of the entire transcript. Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss or for Summ. J., Ex. 2.

11

[p]laintiff's sentencing hearing in no way diminishes [its] defense under the 'fair reporting' privilege." *Id.* at 2. BNA represented that its failure to cite the prosecutor as the source of the allegedly libelous statements "is entirely understandable . . . since the excerpt . . . was, at best, unclear on this issue, and indeed, gave the impression that this information was part of the sentencing itself." *Id.* at 6.

However unclear the petition's excerpt may have been about the source of the offending statements, BNA's summary and clarification are written as if the sentencing judge made findings or issued a ruling reflecting the offending comments, including that plaintiff "showed no hint of contrition" and that he harbored "religious and philosophical beliefs" which justified the murders of which he was convicted. Plaintiff demonstrates that the allegedly defamatory statements published by BNA in the 2005 edition of the CLR and referred to in the 2007 clarification are properly attributable to the prosecutor, as shown by the transcript of the June 24, 1983 sentencing hearing. It appears, then, that the judicial proceeding upon which BNA relies for its claim of privilege is not the mandamus petition but instead is the underlying criminal proceeding. BNA cannot avail itself of the fair report privilege simply by relying on the purported lack of clarity in attribution of the relevant statement in the mandamus petition's appendix. Neither BNA's published summary nor its clarification represents an accurate and complete report on or a fair abridgement of the mandamus petition itself, which the Court

presumes without deciding is a matter of public concern.[6] For these reasons, the Court concludes that the fair reporting privilege does not apply.

## CONCLUSION AND ORDER

Whether BNA's published statements are defamatory is a contested factual question that must be resolved by a jury, not on a motion for summary judgment. Moreover, the published statements do not qualify for protection under the fair reporting privilege. Therefore, it is hereby

ORDERED that the parties' cross-motions [Dkt. # 6, 22] are DENIED.

SO ORDERED.

Signed this 13th day of September, 2011.

/s/
RICHARD W. ROBERTS
United States District Judge

---

[6] One potential harm of the summary is highlighted by the fact that it is only the paragraph following the one purporting inaccurately to report the "ruling below" that purports to summarize the contents of the mandamus petition by listing the questions presented to the Supreme Court.