UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
YORIE VON KAHL,                     )
                                    )
            Plaintiff,              )
                                    )
        v.                          )          Civil Action No. 09-0635 (RWR)
                                    )
BUREAU OF NATIONAL AFFAIRS, INC.,   )
                                    )
                                    )
            Defendant.              )
_____ )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's motion seeking reconsideration of the

order denying summary judgment and seeking judgment on the pleadings.[1]  For the reasons

discussed below, the motion will be denied in part and granted in part.

## I.  BACKGROUND

Two deputy United States Marshals accompanied by local law enforcement officers

attempted to serve a federal arrest warrant in North Dakota in 1983.  A shootout ensued, leaving

the two deputy marshals dead.  The plaintiff and Scott Faul "were each charged with two counts

of first degree murder; four counts of assaulting United States Marshals and other law

enforcement officers assisting them; one count of conspiring to assault; and one count of

harboring and concealing a fugitive.  The jury found them not guilty of first degree murder, but

guilty of the lesser included offense of second degree murder, and guilty of the remaining

---

[1]      Defendant's motion to strike plaintiff's opposition to its motion for reconsideration and
for judgment on the pleadings [ECF No. 47] will be denied.

charges." *United States v. Faul*, 748 F.2d 1204, 1207-08 (8th Cir. 1984); *see* Pl.'s Opp'n to

Def.'s Mot. for Recons. and for J. on the Pleadings ("Pl.'s Opp'n to Recons."), Ex. B (Verdict

on the Offenses Charges Against Yorie Von Kahl, *United States v. Kahl*, No. C3-83-16 (D.N.D.

May 28, 1983)) at 1-2.

The Bureau of National Affairs, Inc. ("BNA") publishes the *Criminal Law Reporter*

("CLR"), a section of which summarizes cases filed before the Supreme Court of the United

States. On August 17, 2005, BNA published in the CLR a summary of plaintiff's mandamus

petition before the Supreme Court:

> **04-1717 In re Kahl**
> *Homicide – Murder of U.S. marshals – Jury instructions –
> Sentencing.*
>
> > Ruling below (D. N.D., 6/24/83):
> >
> > Petitioner, who showed no hint of contrition and made
> > statements to press that he believed that murders of U.S. marshals
> > in course of their duties were justified by religious and
> > philosophical beliefs, is committed to custody of the U.S. Attorney
> > General for imprisonment for life based on his convictions on two
> > counts of violating 18 U.S.C. §§ 1111, 1114, and 2, terms to run
> > concurrently; for 10-year term of imprisonment on each of four
> > counts on which he was convicted of violating 18 U.S.C. §§
> > 111[1], 1114, and 2, which terms will run concurrently but
> > consecutively to life term; to five-year term of imprisonment for
> > violating 18 U.S.C. §§ 1071 and 2, term to run consecutively to 10-
> > year term and life term; and to five-year term of imprisonment on
> > his  conviction for violating 18 U.S.C. § 371, term to run
> > concurrently to five-year, 10-year, and life terms.

Compl., Ex. 1 (CLR summary for Docket No. 04-1717, In re Kahl) (emphasis in original). The

next paragraph of the summary set forth the legal questions presented in the mandamus petition.

*Id*., Ex. 1. Plaintiff says his petition "expressly . . . denied any murder of U.S. Marshals in [the]

course of their duties as reflected in the jury acquittals expressly finding [p]laintiff 'Not Guilty'

. . . and was seeking to compel enforcement of the jury's acquittals" through the mandamus petition. *Id*. ¶ 9. According to plaintiff, the first sentence of the August 17, 2005 summary contained four false statements:

> (1) "showed no hint of contrition";
> (2) "made statements to the press that he believed that murders of U.S. marshals in course of their duties were justified";
> (3) "believed" such justification on basis of "religious and philosophical beliefs"; and
> (4) "is committed to custody . . . based on his convictions of two counts of violating 18 U.S.C. §§ 1111, 1114, and 2, . . ."

Compl. ¶ 11.

On July 18, 2007, BNA published "a purported '[c]larification,'" *id*. ¶ 14 (brackets in original), which stated:

> **Clarification**
>
> In a Summaries of Recently Filed Cases entry that ran at 77 CrL 2127, concerning U.S. Supreme Court petition No. 04-1717, the summary of the sentencing judge's ruling should have begun: "Petitioner who was said to have believed that murders were justified, . . . ."

*Id*., Ex. 2 (Clarification) (emphasis in original).

Each count of plaintiff's complaint corresponds to an allegedly false statement: (1) that plaintiff '"showed no hint of contrition' in respect to murders of officers performing duties," Compl. ¶ 17 (Count One); (2) that plaintiff '"made statements to the press that he believed that murders of U.S. marshals . . . were justified,'" *id*. ¶ 28 (Count Two); (3) that plaintiff considered the murders justified on religious and philosophical grounds, *id*. ¶ 32 (Count Three); (4) that plaintiff had been "committed to custody . . . based on his convictions of two counts of violating 18 U.S.C. §§ 1111, 1114, and 2," *id*. ¶ 36 (Count Four); and (5) that the purported clarification was "a further false attribution," *id*. ¶ 40 (Count Five). Each of the first four statements, plaintiff

alleges, was "false and defamatory," *id.* ¶ 17, was made "without privilege to third parties," *id.* ¶18, was "defamatory on its face and libelous *per se*," *id.* ¶ 20, and was made "with knowledge that it was false or with reckless disregard of whether it was true or not," *id.* ¶ 22; *see id.* ¶¶ 28, 32, and 36.  In addition, BNA's purported clarification allegedly "was false," *id.* ¶ 41, and in effect "support[ed] the original falsehoods with an appearance that they were statements made by a judge in a judicial proceeding as part of a judgment." *Id.* ¶ 40.  As a result, the statements "injured Plaintiff's community standing or lowered him in the estimation of the community of the District of Columbia . . . especially within the community to which such article was directed – *i.e.*, the legal and governmental communities . . . where the greatest possible injury . . . did occur," *id.* ¶ 23, making "[p]laintiff appear entirely irrational, unsound, psychotic and otherwise odious, infamous, or ridiculous," *id.* ¶ 24.

Plaintiff further alleges that he has suffered "extraordinary and *special harm*." *Id.* ¶ 26 (emphasis in original).  He asserts that his "character, reputation and credibility were essential to fair consideration of his then-pending matters" before the Supreme Court, *id.* ¶ 26(b), and "libel targeting the legal community including judges and their staff making [p]laintiff appear . . . odious and dangerous at such time could only tend to intimidate judicial officers from maintaining impartial adjudication so as to disassociate any possible showing favorable to [p]laintiff," and thus the publication "could be perceived as an attempt to influence the legal outcome" of his case, *id.* ¶ 26(d).  In other words, he attributes the denial of his mandamus petition by the Supreme Court to BNA's publication of the allegedly libelous statements in the CLR, *id.* ¶ 26(e), causing him to "suffer[] special harm in the specialized community wherein such statements would be expected to cause the ultimate harm," *id.* ¶ 26(f), "beyond that

normally associated with and attributable to libel," *id.* ¶ 27.  Plaintiff demands compensatory, special, and punitive damages on each count. *Id.* ¶¶ 48-50.

BNA unsuccessfully sought dismissal or summary judgment.  It now seeks reconsideration and judgment on the pleadings.

## II.  DISCUSSION

### A.  The Court's September 13, 2011 Ruling

In its motion to dismiss or for summary judgment, BNA argued that the "allegedly defamatory entries in the [CLR] are protected by the District of Columbia's 'fair reporting privilege.'"  Mem. of P. & A. in Supp. of Def. [BNA's] Mot. to Dismiss or for Summ. J. [ECF No. 7] ("Def.'s Mem.") at 10. [2]  Under District of Columbia law, the fair reporting privilege has been described as follows:

> [D]efamatory matter concerning another in a report of any official proceeding or any meeting open to the public which deals with matters of public concern is published on a conditionally privileged occasion if the report is (a) accurate and complete, or a fair abridgment of what has occurred, and (b) published for the purpose of informing the public as to a matter of public concern.

*Oparaugo v. Watts*, 884 A.2d 63, 81 (D.C. 2005) (quoting *Phillips v. Evening Star Newspaper Co.*, 424 A.2d 78, 88 (D.C. 1980)).

An excerpt of the transcript of the June 24, 1983, sentencing hearing before Chief Judge Paul Benson of the United States District Court for the District of North Dakota was reproduced and attached as an exhibit to plaintiff's mandamus petition, and the first page beneath the caption read:

---

[2]      Because the parties presented, and the Court considered, matters outside the pleadings, the parties' motions were treated as cross-motions for summary judgment.  *See* Fed. R. Civ. P. 12(d).

TRANSCRIPT
of
PROCEEDINGS
June 24, 1983
1:30 o'clock P.M.
(Sentencing)

U.S. District Courthouse
[illegible] Federal Building
Fargo, North Dakota
BEFORE: CHIEF JUDGE PAUL BENSON

\* \* \*

[illegible] sentence for each of these Defendants.
With regard to Yorie Von Kahl there is not even a hint of
contrition. The man refused to even talk to the probation officer.
We have statements at trial and those issued to the press and
whatnot that this man honestly believes that these murders, cold
blooded calculated murders[,] were justified by some sort of a
perverted religious philosophical belief which perhaps wasn't even
his, perhaps it was simply that of his father's [sic]. This country is
not safe for Yorie Von Kahl.

Def.'s Mem., Ex. A (App. 33-34). Based on this transcript excerpt, BNA asserted that "[t]here is

simply no legitimate dispute over whether BNA's description of the ruling that was the subject

of Plaintiff's Writ of Mandamus was an 'accurate and complete, or a fair abridgement' of that

ruling." Def.'s Mem. at 11. As long as its summary was a "fair abridgement" of the court

proceedings being reported, BNA argued that it is protected from a defamation suit by the fair

reporting privilege. *Id.* And in light of the "high profile nature of [p]laintiff's heinous crimes,"

BNA claimed it "beyond question that the statements at issue were published 'for the purpose of

informing the public as to [a] matter of public concern.'" *Id.* (citation omitted).

Plaintiff produced an excerpt of the actual transcript of the sentencing hearing showing

that the prosecutor, not the sentencing judge, made the allegedly offending statement. Mem. of

P. & A. in Supp. of Pl.'s Objections to Def. BNA's Mot. to Dismiss or for Summ. J. and Cross-

Mot. for Summ. or Partial Summ. J., and/or for Declaratory J. [ECF No. 21] ("Pl.'s Opp'n and

Cross-Mot."), Ex. A at 24:1-10; *see also* Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss or

for Summ. J. [ECF No. 23] ("Def.'s Reply"), Ex. 2 (certified copy of entire transcript).  BNA

maintained that the fair reporting privilege still applied, notwithstanding its failure to attribute

the offending statements to the prosecutor rather than the presiding judge, because "the excerpt

. . . was, at best, unclear on this issue, and indeed, gave the impression that this information was

part of the sentencing itself."  Def.'s Reply at 6.

On September 13, 2011, the Court denied the parties' cross-motions for summary

judgment.  *See Kahl v. Bureau of Nat'l Affairs, Inc.*, 810 F. Supp. 2d 138 (D.D.C. 2011).  With

respect to BNA's assertion of the fair reporting privilege, the transcript that plaintiff produced

demonstrated the existence of a genuine issue of material fact as to the attribution of the

allegedly defamatory statements.  *Id.* at 145.  The CLR summary was written as though the

statements in question were part of the sentencing judge's ruling when the statements actually

were those of the prosecutor.  *Id.*  The Court did not find as a matter of law sufficient to support

summary judgment for BNA that "BNA's published summary [or] its clarification represent[ed]

an accurate and complete report on or a fair abridgement of the mandamus petition[.]"  For those

reasons, the Court stated that "the fair reporting privilege does not apply."  *Id.* at 146.

### B.  BNA's Rule 54(b) Motion

BNA has moved for reconsideration.  The Court may revise its own interlocutory

decisions "at any time before the entry of judgment adjudicating all the claims and the rights and

liabilities of all the parties."  Fed. R. Civ. P. 54(b); *see also Singh v. George Washington Univ.*,

383 F. Supp. 2d 99, 101 (D.D.C. 2005).  "[I]nterlocutory judgments are . . . subject to the

complete power of the court rendering them to afford such relief from them as justice requires."

*Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000) (citations omitted).  "[A]sking 'what

justice requires' amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). Reconsideration under Rule 54(b) is warranted where, for example, the Court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (internal quotation marks omitted)). None of these circumstances is present in this case.

It appears to BNA that the September 13, 2011 ruling deemed it insufficient for BNA to "attribute its summary to the Petition generally," but instead "was required to attribute each statement in the summary to a particular exhibit to the Petition or the specific declarant of the statement found within a particular exhibit to the Petition." Mem. in Supp. of Def. [BNA's] Mot. for Recons. and for J. on the Pleadings [ECF No. 38] ("BNA Mem.") at 8-9. The Memorandum Opinion "does not cite legal authority for its denial of BNA's fair reporting privilege defense based on a perceived, and disputed, inaccuracy of attribution." *Id.* at 13. BNA argues that "the Court should reconsider its denial" of BNA's prior motion and grant its motion to dismiss. *Id.* at 4. Alternatively, "the Court should reconsider its dismissal of BNA's fair reporting privilege defense," in order that the parties may "litigate through discovery the facts relevant to Von Kahl's opposition to the fair reporting privilege." *Id.*

BNA makes a fair point to the extent that the Memorandum Opinion's statement that the fair reporting privilege does not apply is construed as denying or dismissing its fair reporting defense. It should suffice to clarify, though, that BNA going forward may still pursue a fair

8

reporting defense.  What the Memorandum Opinion would not do is allow that asserted defense to support summary judgment for BNA.  Reconsideration of the order denying BNA's dispositive motion, however, is not warranted.

### C.  BNA's Motion for Judgment on the Pleadings

BNA moves under Rule 12(c) of the Federal Rules of Civil Procedure for judgment on , the pleadings on plaintiff's defamation claims.  To state a claim of defamation under District of Columbia law, a plaintiff must allege:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001) (quoting *Crowley v. N. Am. Telecomms. Assoc.*, 691 A.2d 1169, 1173 n.2 (D.C. 1997) (quoting *Prins v. Int'l Tel. & Tel. Corp.*, 757 F. Supp. 87, 90 (D.D.C. 1991)) (internal quotation marks omitted).  The standard applied to a motion for judgment on the pleadings under Rule 12(c) is essentially the same as the standard applied to a motion to dismiss under Rule 12(b)(6).  *See, e.g., Rollins v. Wackenhut Servs.*, 802 F. Supp. 2d 111, 116 (D.D.C. 2011)), *aff'd*, 703 F.3d 122 (D.C. Cir. 2012; *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 265 (D.D.C. 2011).  A complaint survives a motion under Rule 12(b)(6) only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting *Twombly,* 550 U.S. at 556).  "[A] complaint [alleging] facts that are merely

consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557).

BNA advances six separate grounds for relief. Each is addressed in turn.

1. BNA's Statement that Plaintiff Showed No Contrition Is Actionable

BNA argues that "[w]hether or not [p]laintiff showed contrition is a statement of opinion, not an assertion of fact capable of being either proved or rebutted; therefore, the statement . . . is not actionable." BNA Mem. at 17. "The statement makes a subjective and qualitative assertion about the Plaintiff's demeanor, and is not, therefore, an assertion of fact," BNA contends. *Id.* "[S]tatements of opinion or belief are not actionable as a matter of law." *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1292 (D.C. Cir. 2008). BNA thus begins with the premise that the alleged falsity and defamatory meaning arises from a characterization of plaintiff's demeanor.

According to plaintiff, BNA "published as a *fact* that [p]laintiff 'showed no hint of contrition' in respect to murders of officers performing duties and such statement was false and defamatory." Compl. ¶ 17. As written, "the original statement[ was] intended to convey the decision of the U.S. district judge who issued the 1983 ruling," a mischaracterization with which plaintiff disagreed. *Id.* ¶ 15. He has alleged that BNA's purported clarification, too, was false because it asserted "that the statements were a summarization of 'the sentencing judge's ruling below.'" *Id.* ¶ 16. "BNA published its 'lack of contrition' comment as a finding and part of 'the sentencing judge's ruling' and not as its own or any else's opinion." Pl.'s Opp'n to Recons. at 20. Plaintiff not only opposes this characterization of his demeanor, but also has demonstrated that the "no hint of contrition" statement was made by the prosecutor, not the sentencing judge.

Based on the Court's liberal reading of plaintiff's complaint and subsequent submissions, the alleged injury does not arise from plaintiff's showing, or absence of a showing, of contrition; rather, the injury arises from the suggestion that the statement at issue is the ruling of the sentencing judge. *See id.* If the summary were read as a whole, rather than in isolation, plaintiff maintains that "possible libelous implications" flow from it. *Id.* at 19.

"Falsity and defamatory meaning 'are distinct elements of . . . defamation and are considered separately.'" *Carpenter v. King*, 792 F. Supp. 29, 34 (D.D.C. 2011) (quoting *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990)); *see Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001). With respect to the falsity prong, it is the plaintiff who "must demonstrate either that the statement is factual and untrue, or an opinion based implicitly on facts that are untrue." *Carpenter*, 792 F. Supp. at 34 (quoting *Lane v. Random House*, 985 F. Supp. 141, 150 (D.D.C. 1995)). Plaintiff adequately demonstrates that the "lack of contrition" statement is not an opinion and that attribution of the statement to the sentencing judge is both factual and untrue. The statement, therefore, is actionable

## 2. Plaintiff Is Not "Libel Proof"

BNA urges a finding that plaintiff is "libel proof," and, therefore, that the statements he challenges are not defamatory. BNA Mem. at 17. A statement is defamatory "if it tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Howard Univ. v. Best,* 484 A.2d. 958, 988 (D.C. 1984); *see Moldea v. New York Times Co.*, 15 F.3d 1137, 1143 (D.C. Cir. 1994) (finding "allegation that a journalist and author is 'sloppy,' or that his book's portrayals of central events are incorrect or misleading" is capable of defamatory meaning in that it "would tend to injure [plaintiff] is his chosen profession, investigative journalism"); *Edmond v. Am. Ed. Servs.*, 823 F. Supp. 2d 28, 35

(D.D.C. 2011) (finding that "[a] statement that a person does not pay his debts timely . . . is capable of a defamatory meaning"), *aff'd*, 483 F. App'x 576 (D.C. Cir. 2012) (per curiam).  The statement "must be more than unpleasant or offensive; the language must make the plaintiff[] appear 'odious, infamous, or ridiculous.'" *Best,* 484 A.2d at 989 (quoting *Johnson v. Johnson Publ'g Co.,* 271 A.2d 696, 697 (D.C. 1970)).  "The plaintiff has the burden of proving the defamatory nature of [a challenged] publication . . . , and the publication must be considered as a whole, in the sense in which it would be understood by the readers to whom it was addressed." *Id.* (citing *Afro-American Publ'g Co. v. Jaffe,* 366 F.2d 649, 655 (1966) (en banc)) (internal citation omitted); *see Weyrich,* 235 F.3d at 614.  On a motion under Rule 12(b)(6), the Court assumes, "as the complaint alleges, the falsity of any express or implied factual statements made" in the CLR, and that "such statements were made by [defendant] with knowledge of their falsity or reckless disregard for their truth."  *Weyrich,* 235 F.3d at 623 (citation omitted). "Whether a statement is capable of defamatory meaning is a question of law." *Id.* at 627.  If a statement is reasonably capable of any defamatory meaning then the Court cannot rule, as a matter of law, that it was not defamatory.  *Id.*

The libel-proof doctrine has been described as follows:

> [W]hen a plaintiff's reputation is so diminished at the time of publication of the allegedly defamatory material that only nominal damages at most could be awarded because the person's reputation was not capable of sustaining further harm, the plaintiff is deemed to be libel-proof as a matter of law and is not permitted to burden a defendant with a trial.

*Lamb v. Rizzo,* 391 F.3d 1133, 1197 (10th Cir. 2004) (citations omitted).  For example, in *Cardillo v. Doubleday & Co., Inc.*, 518 F.2d 638 (2d Cir. 1975), the Second Circuit found as a matter of law that the appellant, who was serving a 21-year prison sentence "for assorted federal

felonies, including separate convictions for stolen securities and bail-jumping [in two states],
conspiracy and interstate transportation of stolen securities in [another state, as well as previous
convictions for] receiving stolen property and numerous minor infractions [in yet another state
was] libel-proof, i.e., so unlikely by virtue of his life as a habitual criminal to be able to recover
anything other than nominal damages as to warrant dismissal of the case." *Id.* at 639.  In *Logan
v. District of Columbia*, 447 F. Supp. 1328 (D.D.C. 1978), the court granted summary judgment
for the defendants on the plaintiff's libel claims because the plaintiff could not demonstrate that
the articles caused any injury to his reputation. *Id.* at 1332.  The plaintiff's multiple criminal
convictions, his admitted drug use, his purported confession to undercover officers that he had
committed a murder, among other factors, made it "highly unlikely that if the plaintiff was to
somehow prevail on the legal issues he would be able to recover damages and, therefore, he
[was] found 'libel proof' as a matter of law." *Id.*  Courts have noted, however, that the doctrine
should be applied cautiously, *see Buckley v. Littell,* 539 F.2d 882, 889 (2d Cir.1976), *cert.
denied,* 429 U.S. 1062 (1977), "since few plaintiffs will have so bad a reputation that they are not
entitled to obtain redress for defamatory statements, even if their damages cannot be quantified
and they receive only nominal damages." *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298,
303 (2d Cir. 1986).

        With the exception of the statement that plaintiff has been "committed to custody . . .
based on his convictions on two counts of violating 18 U.S.C. §§ 1111, 1114, and 2," Compl. ¶
11, the statements published in the CLR summary are capable of a defamatory meaning.  As
written, the statements represent that the sentencing judge ruled that plaintiff showed no
contrition, that plaintiff believed the murders of federal law enforcement officers were justified
for religious or philosophical reasons, and that plaintiff made statements to this effect to the

press.  A trier of fact reasonably may conclude that such statements make plaintiff appear odious,

infamous or ridiculous.  As plaintiff observes, BNA's false assertion "that [he told] the media

that he murdered marshals performing official duties for religious and philosophical reasons with

what amounts to arrogant scorn ('no contrition') or that the sentencing judge found these

falsehoods as fact, at the least implies nothing less than a conviction for first degree premeditated

murder and a confession for the same."  Pl.'s Opp'n to Recons. at 24 (emphasis in original).

Furthermore, such statements are inconsistent with plaintiff's efforts to seek enforcement

of the jury's "not guilty" verdict on the first degree murder charges.  According to plaintiff, BNA

"advertises its 'objective reporting,'" that is "wholly 'free of bias, opinion, and jargon,' with

'[c]areful attribution of sources.'"  Compl. ¶ 6.  It presents itself as a "must read" publication in

the business and government community in the District of Columbia and elsewhere.  Id.; see id. ¶

7.  These allegations suggest that the CLR's readers deem the publication a credible source of

information.  Cf. Stern v. Cosby, 645 F. Supp. 2d 258, 271 (S.D.N.Y. 2009) (noting a "qualitative

difference between comments made on a tabloid television show and written statements in a

book purporting to be the product of legitimate 'investigative journalism'").  In this case, more

than 20 years elapsed between plaintiff's convictions and publication of the CLR summary.  The

passage of time, as well as the geographical distance between North Dakota and the District of

Columbia where press coverage at the time of the murders likely was not as extensive, tend to

undermine the argument that plaintiff's reputation is so damaged that it is incapable of further

harm.  See DaSilva v. Time, Inc., 908 F. Supp. 184, 187 (S.D.N.Y. 1995) (denying Time's

summary judgment motion where "a material issue of fact exists as to whether [plaintiff's new]

reputation could have and did suffer damages," because even though plaintiff had been a

prostitute, "by the time the photograph [of plaintiff as teenage prostitute] was taken and

14

published, . . . she had developed a new reputation in her new community . . . as a wife and mother rather than as a prostitute"); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1074 (5th Cir. 1987) (finding that district court did not err in reserving question of plaintiffs' libel-proof status for the jury where six years had elapsed since their criminal convictions and where plaintiffs, "former law enforcement officers stripped of their offices and held in the jail they formerly supervised," had submitted affidavits as evidence of their "improved standing"); *cf. Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563, 1568 (D.C. Cir. 1984) ("[W]e cannot envision how a court would go about determining that someone's reputation had already been 'irreparably' damaged -- *i.e.,* that *no* new reader could be reached by the freshest libel."), *vacated on other grounds*, 477 U.S. 242 (1986).

Where, as here, "it appears that the statements are at least capable of a defamatory meaning, whether they were defamatory and false are questions of fact to be resolved by the jury." *Moss v. Stockard,* 580 A.2d 1011, 1023 (D.C. 1990) (citing *Olinger v. American Sav. & Loan Ass'n,* 409 F.2d 142, 144 (1969) (per curiam)).  Plaintiff's convictions of serious and violent crimes erect a high hurdle for him in convincing a trier of fact that his reputation has suffered because of the allegedly defamatory statements published in the CLR.  *See Carpenter*, 792 F. Supp. 2d at 34 n.2 (deeming it "highly doubtful" that the reputation of a plaintiff who had been convicted of first degree murder and sentenced to a term of 50 years to life in prison "could sustain any further harm from the alleged defamatory statements published at least three years after his conviction").  Plaintiff's criminal history is relevant and ultimately may lead a trier of fact to award plaintiff only nominal damages or no damages at all.  But, his criminal history alone is not a basis to curtail these proceedings at this stage.  *See Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1079 (3d Cir. 1985) (stating that, although evidence of

15

plaintiff's tarnished reputation is admissible as relevant to compensatory damages, even if evidence suggests that plaintiff's "reputation was sullied before the article was published, [the court] cannot say as a matter of law that [plaintiff] was libel proof"). BNA's motion to dismiss plaintiff's claims on the ground that he is libel proof will be denied.

   3. <u>Plaintiff Adequately Identifies the Recipients of Allegedly Defamatory Statements</u>

   BNA argues that plaintiff fails to address the second element of a defamation claim -- alleging that the offending statements were made to a third party -- by identifying "any specific, alleged recipient of the defamatory statement." BNA Mem. at 21 (emphasis removed). The claim must be dismissed, BNA contends, because plaintiff's "sweeping allegation . . . is insufficient to plead the 'publication to a third party' element of a claim for defamation." *Id.*

   Plaintiff responds that he not only has specified the dates on which the defamatory statements were published, but also has alleged that the statements "were published and 'read in the District of Columbia,'" among other locations, by "sophisticated" "members of the criminal bar," among other readers. Pl.'s Opp'n to Recons. at 22. BNA is a publisher, *see* Compl. ¶¶ 5-6, and plaintiff asserts that "judicial notice may be taken at least [to] permit this Court to reasonably infer that BNA published the statements to third parties in fact." Pl.'s Opp'n. to Recons. at 22 (emphasis removed). [F]urthermore, the identities of "particular third parties, if such specificity is required," can be ascertained during discovery. *Id.* In any event, plaintiff explains that he became aware of the statements only after a friend, whom plaintiff describes as "a long-time reader of BNA's Criminal Law Reporter," read the statements published in the CLR on August 17, 2005 and expressed to plaintiff his "shock[] at the unexpected sensationalism and falsity" of the statements, particularly in light of his friend's personal knowledge of the underling events. *Id.* at 23.

"[T]he interest protected by the law of defamation is that in reputation and it is therefore essential to liability . . . that the defamation be communicated to some one other than the person defamed." *Washington Annapolis Hotel Co. v. Riddle*, 171 F.2d 732, 737 (D.C. Cir. 1949). Plaintiff offers more than "vague allegations" that defamatory statements have been spread "all over" to unknown readers, as the plaintiff did in *Ye v. Holder*, 644 F. Supp. 2d 112, 116 (D.D.C. 2009). "In order to plead defamation, a plaintiff should allege specific defamatory comments . . . by pleading the time, place, content, speaker, and listener of the alleged defamatory matter." *Caudle v. Thompson*, 942 F. Supp. 635, 638 (D.D.C. 1996) (brackets, internal quotation marks and citations omitted). Plaintiff has done so here, and a liberal reading of his verified complaint sufficiently alleges that the offending statements have been published to third parties.

### 4.  Plaintiff Is A Limited Purpose Public Figure

If "an individual voluntarily injects himself or is drawn into a particular public controversy, [he] thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). BNA posits that plaintiff is a limited purpose public figure. BNA Mem. at 22. As a public figure, plaintiff can prevail on his defamation claims, BNA argues, only if he can show that BNA published the offending statements in the CLR with actual malice. *Id*. at 23. And because plaintiff "has failed to allege facts . . . supporting an inference that BNA acted with actual malice," BNA argues that his libel claim must be dismissed. *Id.* at 24.

The District of Columbia Circuit set forth a three-prong test to determine whether a plaintiff has become a limited-purpose public figure. *See Lohrenz v. Donnelly*, 350 F.3d 1272, 1279 (D.C. Cir. 2003) (citing *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1296-98 (D.C. Cir. 1980)). First, the court must "isolate the public controversy," that is, determine

whether there was "a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants." *Waldbaum*, 627 F.2d at 1296. The controversy must have involved the discussion of "some specific question," because a "general concern or interest will not suffice." *Id.* at 1297. "People's interest in a story merely as voyeurs is not enough to make it a public controversy for these purposes." *Clyburn v. News World Communications, Inc.*, 903 F.2d 29, 32 (D.C. Cir. 1990). Second, the court must analyze the plaintiff's role in the controversy. *Waldbaum,* 627 F.2d at 1297. To achieve limited public figure status, the plaintiff "either must have been purposely trying to influence the outcome or could realistically have been expected, because of his position in the controversy, to have an impact on its resolution." *Id.* Even if the plaintiff did not push his way to the forefront of the controversy, he may become a limited purpose public figure involuntarily. For example, one of the first two female fighter pilots was found to have become a limited purpose public figure because of her awareness that the role of women in combat was the subject of public controversy. *See Lohrenz*, 350 F.3d at 1281. Third, the Court must determine whether the allegedly defamatory statements were "germane to the plaintiff's participation in the controversy." *Waldbaum*, 627 F.2d at 1298. In the end, "[t]hose who attempt to affect the result of a particular controversy have assumed the risk that the press, in covering the controversy, will examine the major participants with a critical eye." *Id.*

BNA argues that plaintiff's "role in the shoot out underlying his murder convictions satisfies these requirements." BNA Mem. at 22. First, BNA identifies the shootout as a "newsworthy public controversy" which received "widespread coverage" in national media. *Id.* In support, BNA submits "a sampling of publicity" about the shoot out, as well as articles and other materials pertaining to the criminal proceedings and plaintiff's conviction and appeals. *See*

*id.* at 4 n.1.  Second, BNA argues that plaintiff "had more than a trivial or tangential prominence

in the shootout, given his conviction for having shot and killed two deputy marshals during the

incident.  *Id.* at 23.  Third, BNA contends that "the alleged defamation is germane to [plaintiff's]

participation the controversy" because the statements "involve [his] motivation for committing

the murders . . . and the extent to which he feels remorse for the killings."  *Id.*  BNA faults

plaintiff's complaint for alleging "actual malice only in conclusory fashion," and such a "naked

assertion devoid of further factual enhancement fails to satisfy" the minimum pleading standard

set forth in Rule 8 of the Federal Rules of Civil Procedure."  *Id.* at 23-24 (internal quotation

marks and citations omitted).

Plaintiff appears to consider the public controversy the discussion of taxation rather than

the shootout itself.  *See* Pl.'s Opp'n to Recons. at 31.  Referring to certain of BNA's exhibits,

plaintiff emphasizes that his late father, Gordon Kahl, and the organization with which he was

associated, the Posse Comitatus, have been active participants in protests against taxation by the

federal government.  *See generally id.* at 31-32.  As of February 13, 1983, plaintiff "had no

publicly espoused 'anti-tax' or 'tax' views," *id.*, Ex. D (Pl.'s Decl.) ¶ 10, and insists that BNA

erroneously characterizes him as a limited purpose public figure based on his late father's

activities and beliefs.  *See generally id.* at 34-35.

Plainly, the February 13, 1983 shootout was a newsworthy event in which plaintiff

played an active role.  The allegedly defamatory statements published in the CLR do pertain to

the shootout.  These factors lead to the conclusion that plaintiff is a limited purpose public figure

who ultimately must demonstrate actual malice in order to prevail in this action.  In other words,

plaintiff must demonstrate that BNA acted "with knowledge that [the statements published in the

CLR were] false or with reckless disregard of whether [the statements were] false or not."  *New*

*York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).  Plaintiff has pled that language in each count. Compl. ¶¶ 22, 28, 32, 36, 41.  Factually, his filings allege that he put BNA on notice that the summary was false and BNA nonetheless published an allegedly false clarification.  With the Court construing his complaint liberally and considering all his filings, as the Court must, *Gray v. Poole,* 275 F.3d 1113, 1115 (D.C. Cir. 2002), BNA's motion to dismiss on the ground that the complaint fails to allege sufficient facts supporting his claim of actual malice will be denied.

### 5.  Plaintiff Cannot Claim Libel *Per Se*

A statement if defamatory *per se* if it falsely imputes a criminal offense.  *See Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 40 (D.D.C. 2005).  BNA argues that plaintiff cannot claim that he is falsely accused of crimes for which he already has been convicted and is serving a lengthy sentence.  BNA Mem. at 25.

Plaintiff counters that BNA's statements "falsely impute first degree premeditated murders . . . and omit any mention of the unanimous jury verdicts of 'Not Guilty' for killing U.S. Marshals performing duties."  Pl.'s Opp'n to Recons. at 27; *see id.* at 24.  Plaintiff certainly was challenging the validity of his convictions under 18 U.S.C. §§ 1111, 1114, and 2.  However, insofar as the CLR summary indicated that he had been "committed to custody of U.S. Attorney General for imprisonment for life based on his convictions" under those statutes, the summary is true.  "Truth is an absolute defense to defamation claims," *Benic v. Reuters America, Inc.,* 357 F. Supp. 2d 216, 221 (D.D.C. 2004), and the CLR summary does not falsely impute that plaintiff has been accused of a crime.

### 6. Plaintiff May Pursue Claims for Special Damages

BNA argues that the complaint includes "no factual content that would allow the Court to draw a reasonable inference that BNA's publication *caused* any 'special harm.'"  BNA Mem. at

23. His allegations of causation and special harm, it contends, "are based on nothing more than [plaintiff's] grossly implausible suggestion that BNA's publications some how caused the United States Supreme Court to deny his Petition for Mandamus." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The plausibility standard is not akin to a "probability requirement," *id.*, and plaintiff need only allege facts to go beyond "a sheer possibility that a defendant has acted unlawfully." *Id.* Based on the current, and scant, record of this case, the Court is not prepared to conclude that the complaint "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted).

## III.  CONCLUSION AND ORDER

While it does bear clarifying that the September 13, 2011 ruling does not bar BNA from raising the fair reporting privilege as a defense, the ruling warrants no reconsideration. And while plaintiff cannot claim libel *per se* because the subject statements do not accuse him falsely of having committed a crime, BNA is not otherwise entitled to judgment on the pleadings.

Accordingly, it is hereby

ORDERED that BNA's motion [ECF No. 38] for reconsideration and for judgment on the pleadings be, and hereby is, DENIED IN PART and GRANTED IN PART. Judgment is entered for BNA on plaintiff's claims for libel *per se*. The motion is otherwise denied. It is further

ORDERED that BNA's motion [ECF No. 47] to strike plaintiff's opposition be, and hereby is, DENIED.

SO ORDERED.

21

Signed this 30th day of March 2013.

/s/

RICHARD W. ROBERTS
United States District Judge