## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

————————————————————— )
                                              )
YORIE VON KAHL,                               )
                                              )
                    Plaintiff,                )
                                              )
            v.                                )        Civil Action No. 09-0635 (KBJ)
                                              )
BUREAU OF NATIONAL AFFAIRS, INC.,             )
                                              )
                                              )
                    Defendant.                )
————————————————————— )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Yorie Von Kahl ("Plaintiff") is currently incarcerated in connection with the 1983 shooting deaths of two United States Marshals in North Dakota. Plaintiff has already extensively litigated issues relating to his trial, including his contentions that he is factually innocent and that the trial court lacked jurisdiction to convict and sentence him in the manner it did. Proceeding now pro se, Plaintiff filed the instant five-count libel complaint against Bureau of National Affairs ("BNA") on April 3, 2009, alleging that false and defamatory statements of fact regarding him were contained in a "summary report" that BNA once published about a petition that Plaintiff had filed with the United States Supreme Court. Plaintiff seeks a total of $100,000,000 in compensatory and special damages, plus $90,000,000 in punitive damages. He also asks that BNA publish a satisfactory correction to mitigate the damage to his reputation that Plaintiff alleges he has suffered.

This matter is before the Court on the parties' third and fourth rounds of briefing regarding substantially the same legal issues.[1]  Specifically, Plaintiff has moved for reconsideration of a prior order entering judgment in BNA's favor on his libel per se claim, arguing that the prior order contains errors of law and fact.  (*See* Pl.'s Mot. to Reconsider Order Precluding Claims of Libel Per Se ("Pl.'s Mot. to Reconsider"), ECF No. 74, at 8.)[2]  The parties have also filed cross-motions for summary judgment.  (*See* Pl.'s Mot. for Partial Summ. J. ("Pl.'s Mot. for Summ. J."), ECF No. 58; Def.'s Mot. for Summ. J., ECF No. 62.)  In his summary judgment motion, Plaintiff asks the Court to enter judgment in his favor with respect to BNA's potential collateral estoppel defense, on the grounds that a jury should be permitted to evaluate the validity of his underlying criminal convictions in order to determine whether the statement that BNA published is false.  (Pl.'s Mot. for Summ. J. at 47-48.)  In its motion, BNA asserts that it is entitled to summary judgment on Plaintiff's claims on the grounds of substantial truth, lack of actual malice, and the fair reporting privilege.  (Def.'s Mot. for Summ. J. at 22-39.)

Because this Court finds (1) that Plaintiff has failed to establish any basis for revisiting the prior order regarding libel per se; (2) that BNA's asserts a colorable collateral estoppel defense; and (3) that material issues of fact exist regarding BNA's legal arguments, it will **DENY** all of these motions.[3]

---

[1]  This matter, which was previously before Chief Judge Roberts, was reassigned to this Court on April 5, 2013.

[2]  Page numbers herein refer to those that the Court's Electronic Filing System automatically assigns.

[3]  Plaintiff has also filed a document entitled "Motion to Invoke the Court's Inherent Powers to Strike Defendant's Combined Motion and Memorandum for Summary Judgment . . . for an Attempt to Perpetrate a Fraud on the Court and Related Misconduct and to Take Such Other Action as Justice Requires."  (ECF No. 78.)  This motion is meritless, and it will be summarily denied.

I.      BACKGROUND AND PROCEDURAL HISTORY

A.      Underlying Facts

In 1983, Plaintiff was with a group of people that included his father, for whom an arrest warrant was pending.  The United States Marshals attempted to arrest Plaintiff's father, and a shoot-out ensued that left two Deputy United States Marshals dead.  As a result of this event, Plaintiff was "charged with two counts of first degree murder; four counts of assaulting United States Marshals and other law enforcement officers assisting them; one count of conspiring to assault; and one count of harboring and concealing a fugitive." *United States v. Faul*, 748 F.2d 1204, 1207 (8th Cir. 1984).[4] Ultimately, "[t]he jury found [Plaintiff] not guilty of first degree murder, but guilty of the lesser included offense of second degree murder, and guilty of the remaining charges."  *Id.* at 1207-08.

Following the jury's verdict, the trial court "adjudged that Defendant, Yorie Von Kahl, . . . has been convicted of violations of 18 United States Code Sections 1111, 1114 and 2 as charged in Counts 1 and 2 of the Indictment" and ordered that he "be committed to the custody of the Attorney General of the United States for life" on these counts.  (Ex. A to Mem. in Supp. of Def. Bureau of Nat'l Affairs, Inc.'s Mot. to Dismiss or for Summ. J. ("Mandamus Pet."), ECF No. 7-1, at 40.)  The Eighth Circuit affirmed the convictions on appeal.  *See Faul*, 748 F.2d at 1223.

Plaintiff nevertheless believes that his convictions under 18 U.S.C. §§ 1114 and 1111 are invalid and that the sentences that the trial court imposed on those convictions were illegal.  With respect to § 1114, Plaintiff maintains that he was never indicted and

---

[4]  Two other individuals, Scott Faul and David Broer, were charged and tried with Plaintiff in connection with the 1983 shoot-out.

tried for second degree murder under § 1114—only first degree murder—and therefore the jury's verdict that he was not guilty of first degree murder controls and its verdict that he was guilty of second degree murder is void.  (Pl.'s Mot. to Reconsider. at 21-22.)  Regarding § 1111, Plaintiff asserts that he has "never been charged or tried for any violation of any offenses" that § 1111 defines or makes punishable.  (*Id.* at 2; *see also* Mandamus Pet. at 14 (asserting that jurisdiction under § 1111 extends only to murders that take place "'within the special maritime and territorial jurisdiction of the United States'" and that prerequisite was not satisfied in his case (quoting 18 U.S.C. §1111(b))).)  Since 1984, Plaintiff has filed a series of unsuccessful challenges to his conviction and sentence, including a motion to correct his "illegal sentence" that he filed with the North Dakota trial court in 2003 in which he made these same invalidity arguments.  *United States v. Voh Kahl*, No. A3-96-55, 2003 WL 21715352 (D.N.D. July 14, 2003).  The North Dakota court rejected these arguments out of hand, *see generally id.*, and the Eighth Circuit affirmed this ruling, *see United States v. Von Kahl*, 95 F. App'x 200 (2004).  Plaintiff also brought his arguments attacking the validity of his convictions to the Supreme Court, filing a petition for a writ of mandamus in 2005 that sought an order compelling the trial judge to vacate his life sentences.  (*See* Mandamus Pet.)[5]

---

[5]  No federal court has granted Plaintiff relief from his convictions and sentence.  *See Kahl v. United States*, 242 F.3d 783 (8th Cir. 2001) (affirming district court's denial of motion to vacate sentence under 28 U.S.C. § 2255), *cert. denied*, 534 U.S. 941 (2001);  *United States v. Faul*, 748 F.2d 1204, 1223 (8th Cir. 1984) (affirming convictions), *cert. denied*, 472 U.S. 1027 (1985); *Peltier v. U.S. Parole Comm'n*, No. 05-3484, 2006 WL 2570553 (D. Kan. Sept. 5, 2006) (dismissing petition for writ of habeas corpus under 28 U.S.C. § 2241), *aff'd sub nom. Von Kahl v. United States*, 321 F. App'x 724 (10th Cir. 2009); *Kahl*, 2003 WL 21715352, at *2 (denying plaintiff's motion to correct sentence pursuant to Fed. R. Crim. P. 35(a)).

Significantly for present purposes, BNA published the following summary of Plaintiff's Mandamus Petition in the August 17, 2015 edition of the *Criminal Law Reporter* ("CLR"):

> **04-1717 In re Kahl**
> *Homicide – Murder of U.S. marshals – Jury instructions – Sentencing.*
>
> Ruling below (D. N.D., 6/24/83):
>
> Petitioner, who showed no hint of contrition and made statements to press that he believed that murders of U.S. marshals in course of their duties were justified by religious and philosophical beliefs, is committed to custody of the U.S. Attorney General for imprisonment for life based on his convictions on two counts of violating 18 U.S.C. §§ 1111, 1114, and 2, terms to run concurrently; for 10-year term of imprisonment on each of four counts on which he was convicted of violating 18 U.S.C. §§ 111[1], 1114, and 2, which terms will run concurrently but consecutively to life term; to five-year term of imprisonment for violating 18 U.S.C. §§ 1071 and 2, term to run consecutively to 10-year term and life term; and to five-year term of imprisonment on his conviction for violating 18 U.S.C. § 371, term to run concurrently to five-year, 10-year, and life terms.

(Ex. 1 to Compl., ECF No. 1-2.)  The next paragraph of the summary set forth the legal questions that Plaintiff's petition presented.  (*Id*.)  Through counsel, Plaintiff complained to BNA that this summary was defamatory because Plaintiff did not make the statements attributed to him, and because it damaged Plaintiff's credibility and reputation in the legal and business community, including specifically the federal courts in which Plaintiff was litigating the validity of his convictions.  (Ex. 5 to Decl. of Jay Brown Ward ("Ward Decl."), ECF No. 62-7, at 2-3.)  Thereafter, BNA published the following statement in the July 18, 2007, edition of the CLR:

> **Clarification**
> In a Summaries of Recently Filed Cases entry that ran at 77 CRL 2127, concerning U.S. Supreme Court petition No. 04-

1717, the summary of the sentencing judge's ruling should have begun:
"Petitioner who was said to have believed that murders were justified, . . . ."

(Ex. 6 to Ward Decl., ECF No. 62-8.)

This summary and clarification form the basis for the instant complaint, in which Plaintiff alleges that the following statements about him that appeared in BNA's original publication are libelous:

1)    "[T]hat Plaintiff showed no hint of contrition in respect to murders of officers performing duties" (Compl. ¶ 17 (internal quotation marks omitted));

2)    That Plaintiff "made statements to the press that he believed that murders of U.S. marshals in course of their duties were justified" (Compl. ¶ 28 (internal quotation marks omitted));

3)    That Plaintiff "positively stated beliefs justifying murders of U.S. marshals in course of their duties was premised upon religious and philosophical beliefs" (Compl. ¶ 32 (internal quotation marks omitted)); and

4)    That Plaintiff "is committed to custody . . . based on his convictions on two counts of violating 18 U.S.C. §§ 1111, 1114, and 2" (Compl. ¶ 36 (alterations in original) (internal quotation marks omitted).)

Plaintiff's complaint further alleges that BNA's "clarification" is also libelous insofar as it "purport[ed] that the statement in question was a 'summary of the sentencing judge's ruling below[.]'"  (*Id.* ¶ 40.)

**B.      Prior Proceedings**[6]

In response to the instant libel complaint, BNA filed a motion for summary judgment (ECF No. 6), and Plaintiff responded with his own cross-motion for summary judgment (ECF No. 22), both of which were denied.  *Von Kahl v. Bureau of Nat'l Affairs, Inc.*, 810 F. Supp. 2d 138, 146 (D.D.C. 2011) (ECF No. 26) ("*Von Kahl I*"). With respect to Plaintiff's motion, the Court found that Plaintiff was not entitled to summary judgment on his defamation claim because the question of whether or not BNA's statements regarding his lack of contrition and religious and philosophical beliefs, as well as BNA's suggestion that those remarks were attributable to the sentencing judge, were defamatory "is a question of fact that the Court cannot resolve on summary judgment."  *Id.* (footnote and citation omitted).  Regarding BNA's motion, the Court found that Plaintiff had adequately alleged that the "no contrition" statement was an assertion of fact rather than opinion, and that the complaint adequately alleged that BNA had falsely presented the statement as if it were the ruling of the sentencing judge, rendering it actionable.  *Id.* at 143.  Furthermore, the Court concluded that the "fair reporting privilege" did not immunize BNA from liability for the summary statement.  *Id.* at 145.[7]

BNA sought reconsideration of this ruling, as well as judgment on the pleadings. (Def.'s Mot. for Reconsider and for J. on the Pleadings, ECF No. 38).  In its written opinion on BNA's motion for reconsideration, the Court clarified its prior order,

---

[6]  This Court will not reproduce the findings and conclusions contained in the prior opinions related to the instant matter in full; it assumes familiarity with those opinions, and expressly incorporates them herein.

[7]  The fair reporting privilege is a conditional immunity that courts afford to those who publish fair and accurate reports of official proceedings, including judicial proceedings.  *Von Kahl I*, 810 F. Supp. 2d at 143-44 (citations omitted).

explaining that while "BNA going forward may still pursue a fair reporting defense[,]" BNA cannot use "that asserted defense to support summary judgment." *Von Kahl v. Bureau of Nat'l Affairs, Inc.*, 934 F. Supp. 2d 204, 212 (D.D.C. 2013) (ECF No. 53) ("*Von Kahl II*").

The Court also addressed BNA's request for judgment on the pleadings, granting in part and denying in part that motion.  Specifically, the Court entered judgment in BNA's favor with respect to one aspect of Plaintiff's libel suit—his claim that the statement regarding the fact of Plaintiff's imprisonment due to his convictions was libel per se—because, in the Court's opinion, "insofar as the CLR summary indicated that [Plaintiff] had been 'committed to custody of U.S. Attorney General for imprisonment for life based on his convictions' under [18 U.S.C. § 1111, 1114 and 2], the summary is true[.]"  *Id.* at 219.  The Court otherwise denied all other aspects of BNA's motion for judgment on the pleadings, finding that BNA's statement regarding Plaintiff's lack of contrition is actionable (*id.* at 213-14); that Plaintiff was not rendered unable to sue for libel (*i.e.*, he was not "libel proof") based on his criminal convictions (*id.* at 214-216); that Plaintiff adequately identified the recipients of the allegedly defamatory statements (*id.* at 216-17); that, while Plaintiff is a limited purpose public figure, the complaint pled sufficient facts to support a claim of actual malice (*id.* at 217-18); and that Plaintiff may pursue claims for special damages (*id.* at 219).

Following this initial motions practice, the parties proceeded to discovery, and the matter was transferred to the undersigned.  Although additional discovery remains to be done (*see* Aug. 21, 2013 Minute Order (setting schedule for additional discovery after resolution of pending motions)), Plaintiff has now moved for reconsideration of

the Court's entry of judgment in BNA's favor on his libel per se claim, arguing that "[t]he Court misapprehended that Plaintiff has been charged[,] tried and convicted of the offense of murder as defined in 18 U.S.C. § 1111, whereas, in fact and as a matter of law, he had been charged, tried and *acquitted* of offenses of killing U.S. marshals performing official duties."  (Pl.'s Mot. to Reconsider at 8.)

The parties have also filed cross-motions for summary judgment, as mentioned above.  (*See* Pl.'s Mot. for Summ. J. (ECF No. 58); Def.'s Mot. for Summ. J. (ECF No. 62).)  In his motion for partial summary judgment, Plaintiff asks this Court to enter judgment in his favor on BNA's potential estoppel defense; that is, Plaintiff wants this Court to order that BNA cannot prevent him from re-litigating in this civil matter whether he was actually convicted of violating 18 U.S.C. §§ 1111, 1114 and 2 in the underlying criminal case.  (Pl.'s Mot. for Summ. J. at 47-48.)  In its motion, BNA asserts that it is entitled to summary judgment because (1) the summary and clarification are substantially true (Def.'s Mot. for Summ. J. at 22-28); (2) Plaintiff cannot establish that BNA acted with actual malice (*id.* at 29-38); and (3) the fair reporting privilege renders the summary and clarification non-actionable (*id.* at 38-39). These motions have been fully briefed and are ripe for this Court's consideration.

## II.   ANALYSIS

### A.   Plaintiff's Motion For Reconsideration Of The Order Entering Judgment For BNA On The Claim Of Libel Per Se

#### 1.   Legal Standard Governing Motions For Reconsideration

A court may revisit and revise prior interlocutory rulings under Fed. R. Civ. P. 54(b) "as justice requires[,]" including "when the Court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the

parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court."  *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (alteration in original) (internal quotation marks omitted); *accord Lyles v. Dist. of Columbia*, 10cv1424, 2014 WL 4216141, at *4 (D.D.C. Aug. 27, 2014).  However, it is well-established in this Circuit that "motions for reconsideration, whatever their procedural basis, cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier."  *Loumiet v. United States*, 12cv1130, 2014 WL 4100111, at *2 (D.D.C. Aug. 21, 2014) (internal quotation marks and citations omitted).)

### 2. Plaintiff Has Not Established Cause For This Court To Revisit The Prior Order Regarding His Libel Per Se Claim

As explained, in its order granting in part and denying in part BNA's motion for judgment on the pleadings, the Court ruled that Plaintiff cannot claim libel per se regarding BNA's published statement that Plaintiff had been committed to the custody of the Attorney General on his "convictions under 18 U.S.C. §§ 1111, 1114 and 2" because Plaintiff had, in fact, been committed to the custody of the Attorney General based on these convictions.  *Von Kahl II*, 934 F. Supp. 2d at 219.  Plaintiff now seeks reconsideration of that finding, arguing that the Court mistakenly isolated from its proper context one of the four allegedly defamatory statements that the BNA publication contained.  (*See* Pl.'s Mot. to Reconsider at 11-12.)  Plaintiff maintains that BNA's summary, taken as a whole, stated or implied that he had been charged, tried and convicted of offenses for which he had *not* been charged, tried and convicted (*see generally id.* at 20-22 (explaining Plaintiff's belief that his charge, trial, and conviction

10

were invalid)), and therefore the BNA summary constitutes defamation per se insofar as it accuses him of having committed, and been convicted of, suche crimes (*id.*).[8]

Plaintiff has fallen well short of establishing his burden under Federal Rule of Civil Procedure 54(b).  As explained, the federal rule that governs motions for reconsideration erects a high bar for parties who desire to have a court revisit and revise a prior ruling.  Although Plaintiff here apparently fervently believes that he has not properly been convicted and sentenced under 18 U.S.C. §§ 1111, 1114 and 2, the Court previously considered this very argument, *see Von Kahl II*, 934 F. Supp. 2d at 219 (noting that "Plaintiff certainly was challenging the validity of his convictions under 18 U.S.C. §§ 1111, 1114, and 2"), and concluded that, regardless of any doubts about the validity of the underlying case, Plaintiff could not claim that BNA's statement that he had been imprisoned based on his conviction for having violated these criminal statutes was false.  *Id.*; *see also Benic v. Reuters Am., Inc.*, 357 F. Supp. 2d 216, 221 (D.D.C. 2004) ("Truth is an absolute defense to defamation [per se] claims." (citing *Olinger v. Am. Sav. & Loan Ass'n*, 409 F.2d 142, 144 (D.C. Cir. 1969)).  Nothing in Plaintiff's present motion for reconsideration suggests that the Court "patently misunderstood" Plaintiff's argument, *Cobell*, 224 F.R.D. at 272; to the contrary, it is clear that the Court fully apprehended the argument that Plaintiff was making regarding the viability of his libel per se claim in opposition to BNA's motion for judgment on the pleadings—and the one he makes again here—and the Court squarely rejected it.  *Von Kahl II*, 934 F.

---

[8] "A statement is defamatory as a matter of law ('defamatory per se') if it is so likely to cause degrading injury to the subject's reputation that proof of that harm is not required to recover compensation."  *Franklin v. Pepco Holdings, Inc.*, 875 F. Supp. 2d 66, 75 (D.D.C. 2012) (citing *Carey v. Piphus*, 435 U.S. 247, 262 (1978)).

Supp. 2d at 219 ("[T]he CLR summary does not falsely impute that plaintiff has been accused of a crime.").  This Court finds no basis for revisiting that ruling now.

### B.   The Parties' Cross-Motions For Summary Judgment

#### 1.   Legal Standard Governing Motions For Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record evidence "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A moving party may successfully support its motion by identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material facts.  Fed. R. Civ. P. 56(c)(1).

Material facts are those that "might affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In determining whether a genuine issue of material fact exists that is sufficient to preclude summary judgment, the Court must treat the non-movant's statements as true and accept all evidence and make all reasonable inferences in the non-movant's favor.  *See Anderson*, 477 U.S. at 255.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment.  *Celotex*, 477 U.S. at 325.  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence in support of" its position.  *Anderson*, 477 U.S. at 252.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249-50 (internal citations omitted).

2.      Plaintiff Is Not Entitled To Summary Judgment On BNA's
        Collateral Estoppel Defense

In the wake of the federal courts' consistent rejection of Plaintiff's arguments regarding the invalidity of his conviction (*see supra* Part I.A & note 5), Plaintiff apparently hopes to sway a new audience—a civil jury—with his legal theory.  To that end, Plaintiff has filed this defamation action, and he seeks in his motion for partial summary judgment to bar BNA from invoking the doctrine of collateral estoppel (otherwise known as issue preclusion) to prevent him from raising the issue of the validity of his criminal conviction under 18 U.S.C. § 1111.  (*See* Pl.'s Mot. for Summ. J. at 1-4.)  In essence, Plaintiff wants this Court to order that a civil jury can determine whether his criminal verdict and sentence are valid—despite what courts have previously said about the matter—as a prerequisite to determining the truth or falsity of BNA's published statement that Plaintiff was imprisoned based on "convictions . . . of violating 18 U.S.C. [§] 1111[.]"  (*Id*. at 1.)  For its part, BNA insists that the doctrine of collateral estoppel prevents Plaintiff from re-litigating anew the issue of whether or not Plaintiff's underlying criminal convictions were valid, in the context of Plaintiff's instant defamation case.  (*See* Def.'s Combined Mem. in Supp. of Def.'s Mot. for Summ. J. and in Opp. to Pl.'s Mot. for Summ. J., ECF No. 64, at 38-39.)  On this point, this Court wholeheartedly agrees with BNA.

Under the doctrine of collateral estoppel, "'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  "To preclude parties from contesting

matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979). Courts apply a three-factor test to determine whether collateral estoppel applies: (1) whether the same issue the party now raises was "contested . . . and submitted for judicial determination"; (2) whether that issue was "actually and necessarily determined by a court of competent jurisdiction in that prior case"; and (3) whether preclusion would "work a basic unfairness to the party bound by the first determination." *Martin v. DOJ*, 488 F.3d 446, 454 (D.C. Cir. 2007) (internal quotation marks and citation omitted).  Courts have also concluded that a finding in a criminal proceeding may bar a party from raising the same issue in a subsequent civil action under the doctrine of collateral estoppel. *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568-69 (1951) (holding that the party opposing re-litigation "is entitled to introduce the prior judgment to establish prima facie all matters of fact and law necessarily decided by the conviction and the verdict on which it was based"); *Otherson v. DOJ*, 711 F.2d 267, 271 (D.C. Cir. 1983) (stating that "issues determined in connection with a criminal conviction may be taken as preclusively established for the purposes of later civil trials") (citations omitted).

In this case, BNA is likely to be able to establish each of the requisite factors to invoke collateral estoppel with respect to the issue of the validity of Plaintiff's criminal convictions, and this Court concludes that it should be free to try.  Plaintiff has previously repeatedly raised the issue of the validity of his convictions in prior courts,

and prior courts have repeatedly considered—and rejected—his arguments (*see supra* note 5), including the specific arguments that he now makes regarding the North Dakota federal court's jurisdiction and the impact of the jury's not guilty verdicts. *See United States v. Voh Kahl*, No. A3-96-55, 2003 WL 21715352 (D.N.D. July 14, 2003), *aff'd*, 95 F. App'x 200 (8th Cir. 2004), *cert. denied*, 125 S. Ct. 1096 (2005); *see also In re Yorie Von Kahl*, 126 S. Ct. 146 (2005) (denying Mandamus Pet.).  Thus, the specter of preclusion is properly raised.  *See, e.g.*, *Martin*, 488 F.3d at 454.  Furthermore, there is no indication that invoking the collateral estoppel doctrine to prevent Plaintiff from raising the issue of the validity of his conviction yet again would result in any "unfairness" to him; in fact, permitting re-litigation of this same question would unfairly require BNA to defend against a criminal judgment that it had nothing to do with in the first instance and that numerous judges have already consistently upheld. *See id.*

Consequently, to the extent that Plaintiff views the instant action as yet another opening to attack his underlying conviction in the guise of challenging BNA's statement that he was "convicted" of the underlying crimes, this Court will not prevent BNA from invoking the collateral estoppel doctrine to argue, and potentially establish, that Plaintiff has previously litigated that issue and that, as a result, any potential window to raise it here again is now closed.

3.   <u>BNA Is Not Entitled To Summary Judgment On Any Of The Grounds Asserted In Its Motion</u>

BNA maintains that Plaintiff has not, and cannot, bear the burden of proving falsity or actual malice, which he is required to do by virtue of the Court's prior rulings in this matter.  (Def.'s Mot. for Summ. J. at 20-36.)  However, this Court concludes that

BNA is not entitled to judgment as a matter of law on the issue of falsity or malice, as

explained below, and it finds no reason to revisit the Court's prior ruling regarding the

applicability of the fair reporting privilege.

> a.    *Material issues of fact exist regarding whether the*
> *statements in the CLR summary and clarification are*
> *substantially true*

It is well established that a defamation action fails where the statement at issue is

true. *See, e.g.*, *Benic*, 357 F. Supp. 2d at 222; s*ee also Moss v. Stockard*, 580 A.2d

1011, 1022 (D.C. 1990) ("In defamation law, it is often said that truth is an absolute

defense[.]").  Here, Plaintiff claims, among other things, that BNA attributed to the

sentencing judge certain potentially defamatory statements regarding Plaintiff's lack of

contrition and Plaintiff's religious and philosophical beliefs that the sentencing judge

did not, in fact, make.  *Von Kahl I*, 810 F. Supp. 2d at 143 (citing Compl. ¶¶ 17-46).

The Court has already concluded that a jury, not the court, must determine whether

these statements were defamatory and whether Plaintiff is entitled to damages as a

result.  *Id.* at 143 ("[W]hether these statements actually are defamatory is a question of

fact that the Court cannot resolve on summary judgment."); *see also White v. Fraternal*

*Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990) ("If, at the summary judgment

stage, the court determines that the publication is capable of bearing a defamatory

meaning, a jury must determine whether such meaning was attributed in fact.").

Undaunted, BNA now points to the doctrine of "substantial truth" under which a

statement that contains some errors can nevertheless be "true" for the purpose of a

defamation case so long as the inaccuracies are minor and "the substance, the gist, [and]

the sting" of the challenged statement is substantially true.  *Masson v. New Yorker*

*Magazine, Inc.*, 501 U.S. 496, 516-17 (1991) (internal quotation marks and citations

omitted).  With respect to Plaintiff's allegation that it was false to suggest in the summary that he showed "no hint of contrition" and that he "made statements to the press that he believed the murders of U.S. Marshals in the course of their duties were justified" by his "religious and philosophical beliefs" (Compl. ¶ 11), BNA maintains that an "examination of whether, when and how [plaintiff] admitted his role in the killings" is necessary in order to determine "whether it was true or false to say that [Plaintiff] had shown no contrition for his acts[,]" (Def.'s Mot. for Summ. J. at 22), and BNA submits excerpts of trial transcripts that purportedly show that plaintiff denied responsibility for the murders to facilitate that examination (*id*. at 22-24).  BNA further asserts that Plaintiff's trial testimony, statements he made in an interview for a documentary film in 1993, and his writings from prison mean that, "as a matter of law, no reasonable jury could find that it was materially false for BNA to have suggested in the [s]ummary that [Plaintiff] had shown no hint of contrition and that he had made statements to the press that the killings were justified for religious and philosophical beliefs."  (*Id*. at 25-26.)

As the Court previously concluded, however, what is at issue here is not any *opinion* about the extent to which Plaintiff's statements and demeanor during or after his conviction demonstrated a lack of contrition, but rather the *fact* that BNA's summary and clarification appeared to attribute the "lack of contrition" characterization to the sentencing judge in a manner that, according to Plaintiff, was untrue.  *Von Kahl II*, 934 F. Supp. 2d at 213-14.  Defendant's proffered evidence is not probative of any evaluation of the potentially false, defamatory, or harmful nature of BNA's suggestion that the sentencing judge believed Plaintiff lacked contrition.  Thus, BNA has not

shown that its statement regarding what the sentencing judge may have believed was "substantially true," and because genuine issues of material fact remain in dispute with respect to the truth or substantial truth of the CLR summary and clarification, this Court cannot enter judgment for Defendant on this basis.

b. <em>Material issues of fact exist regarding whether BNA acted with actual malice</em>

Because Plaintiff has been found to be a limited purpose public figure (*see Von Kahl II*, 934 F. Supp. 2d at 217-18), "[m]ere negligence" on BNA's part does not render it liable for defamation. *Parsi v. Daioleslam*, 595 F. Supp. 2d 99, 104 (D.D.C. 2009). Rather, Plaintiff must prove by clear and convincing evidence that the allegedly defamatory statements were made with actual malice, "that is, with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *see also Masson*, 501 U.S. at 511 ("In place of the term actual malice, it is better practice that jury instructions refer to publication of a statement with knowledge of falsity or reckless disregard as to truth or falsity."). Plaintiff may show actual malice with "evidence establishing that the story was (1) fabricated; (2) so inherently improbable that only a reckless man would have put [it] in circulation; or (3) based wholly on an unverified anonymous telephone call or some other source that the defendant had obvious reasons to doubt." *Tavoulareas v. Piro*, 817 F.2d 762, 790 (D.C. Cir. 1987) (alteration on original) (internal quotation marks and citation omitted).

Here, Plaintiff claims that BNA's description of his Mandamus Petition was inaccurate, and he points to the face of the Petition itself as evidence tending to show that BNA acted with actual malice in drafting and publishing the summary. In this

18

regard, this Court has reviewed the Mandamus Petition, and notes that the document does not mention Plaintiff's purported "lack of contrition" or "religious and philosophical beliefs" at all, which calls into question the substance of BNA's purported "summary" of that document.  Language related to "contrition" and the Plaintiff's purported religious belief that the killings were "justified" appears only in the Appendix to the Petition, and when citing to these pages of the Appendix, the Mandamus Petition itself clearly identifies the speaker as the prosecutor, not the sentencing judge. (Mandamus Pet. at 9.)  This Court concludes that these discrepancies between what the Mandamus Petition actually says and what BNA's "summary" reports are sufficient to create a genuine dispute of material fact regarding whether BNA acted with reckless disregard with respect to the truth or falsity of the statements in its summary. Accordingly, the Court must deny BNA's motion for summary judgment on this basis.

> c.    *This Court will not revisit the prior fair reporting privilege rulings*

Finally, for the third time in this matter, BNA asks for a ruling as a matter of law that the fair reporting privilege shields it from liability for the CLR summary and clarification. *See Von Kahl I*, 810 F. Supp. 2d at 143-46; *Von Kahl II*, 934 F. Supp. 2d at 211-12.  This Court construes BNA's re-raising of the same legal issue that the Court has already resolved as a motion for reconsideration of the Court's prior ruling on the fair reporting privilege request, and so construed, denies that motion.  As explained above, the Court has already concluded that, while BNA can pursue a fair reporting privilege defense, it cannot succeed on that defense at the summary judgment stage. *Von Kahl II*, 934 F. Supp. 2d at 212.  BNA points to no intervening change in the law, or

19

any mistake of law or fact, that would justify revisiting this ruling.  *See Cobell*, 224 F.R.D. at 271-72.

## III.   CONCLUSION

For the reasons stated above, this latest chapter in the parties' extended defamation dispute concludes in much the same way as the chapters that proceeded it: without entry of summary judgment for either party in a manner that would terminate this case.  In sum, this Court concludes (1) that it will not revisit its prior rulings that Plaintiff cannot proceed on a libel per se theory and that BNA cannot base its summary judgment argument on the fair reporting privilege defense; (2) that BNA is not entitled to summary judgment on Plaintiff's other defamation claims; and (3) that Plaintiff is not entitled to an order preventing BNA from raising a collateral estoppel defense if he attempts to challenge to the validity of his conviction once again.  Accordingly, it is hereby

**ORDERED** that Plaintiff's [74] Motion to Reconsider Order Precluding Claims of Libel Per Se; [58] Motion for Partial Summary Judgment; and [78] Motion to Invoke the Court's Inherent Powers to Strike Defendant's Combined Motion and Memorandum for Summary Judgment . . . for an Attempt to Perpetrate a Fraud on the Court and Related Misconduct and to Take Such Other Action as Justice Requires are **DENIED** and that [62] Defendant's Motion for Summary Judgment is **DENIED**.  It is

**FURTHER ORDERED** that the parties shall serve any additional written discovery requests by **October 21, 2014**, and that BNA shall file a motion proposing

specific deadlines for the completion by both parties of all remaining discovery so that the matter can be promptly readied for trial.

DATE:  September 30, 2014                    *Ketanji Brown Jackson*
                                             KETANJI BROWN JACKSON
                                             United States District Judge